# EXHIBIT 5

CHICAGO ASSOCIATION OF REALTORS/MLS
RESIDENTIAL REAL ESTATE SALE CONTRACT
(single family home/fee simple townhome)



1. This Contract is made between **Jose M Garcia** ("Buyer") and **Maria Elrod** ("Seller")
2. (collectively, "Parties"), to convey the real property known as **5425 W. Carmen** (Address) **Chgo** (City) **IL** (ST) **60630** (Zip) ("Property"), together with all
3. improvements. A fully executed original of this Contract shall be held by Listing Broker. The date of the offer of this Contract is _____, 200__.
4. 1. **Fixtures and Personal Property.** In addition to the Property, Seller shall transfer to Buyer by a Bill of Sale, all heating, cooking, electrical, and plumbing systems,
5. together with the following checked items:

- ☐ T.V. Antenna___
- ☐ Washer___
- ☐ Central air conditioner___
- ☐ Water softener___
- ☐ Wall to wall carpeting___
- ☐ Refrigerator___
- ☐ Dryer___
- ☐ Window air conditioner___
- ☐ Fireplace gas log___
- ☐ Existing storms & screens___
- ☐ Oven/Range___
- ☐ Attached book cases and cabinets___
- ☐ Electronic air filter___
- ☐ Firewood___
- ☐ Radiator covers___
- ☐ Microwave___
- ☐ Smoke and carbon monoxide detectors___
- ☐ Central humidifier___
- ☐ Lighting Fixtures___
- ☐ All planted vegetation___
- ☐ Dishwasher___
- ☐ Garbage disposal___
- ☐ Fireplace screen and equipment___
- ☐ Sump pump___
- ☐ Trash compactor___
- ☐ Outdoor shed___
- ☐ Built-in or attached shelving___
- ☐ Home warranty (as attached)___
- ☐ Security system___
- ☐ Window treatments___
- ☐ Ceiling fan___
- ☐ Electronic garage door(s) with ___ remote w/mit___

Seller also transfers the following: _____ The following items are specifically excluded: _____

2. **Purchase Price.** The purchase price for the Property and the Items identified in Paragraph 1 is $ **450,000** ("Purchase Price").

3. **Earnest Money.** Upon Buyer's execution of this Contract, Buyer shall deposit with _____ ("Escrowee"), initial earnest money in the amount of $ **1,000**, in the form of **check** ("Initial Earnest Money"). The Initial Earnest Money shall be returned and this Contract shall be of no force or effect if this Contract is not accepted by Seller on or before _____, 200__. The Initial Earnest Money shall be increased to 10% of the Purchase Price ("Final Earnest Money") within ___ business days after the expiration of the Attorney Approval Period (See Paragraph 12 of this Contract) (the Initial and Final Earnest Money are collectively referred to as the "Earnest Money"). Buyer and Seller shall execute all mutually agreed and necessary documents with regard to the Earnest Money. Except as otherwise agreed, Buyer shall pay all expenses with regard to the Earnest Money.

4. **Payment of Balance; Mortgage Contingency.** (a) In addition to the Final Earnest Money, the balance of the Purchase Price shall be paid at closing, plus or minus prorations, by cash, cashier's check, certified check, wire transfer of funds, or other payment mutually agreed by the Parties. (b) This Contract is contingent upon Buyer securing by **11/21 2007** ("First Commitment Date") a written commitment ("Required Commitment") for a fixed rate or an adjustable rate mortgage permitted to be made by a U.S. or Illinois savings and loan association or bank for $ _____ (the interest rate (or initial interest rate if an adjustable rate mortgage) not to exceed ___% per year, amortized over ___ years, payable monthly, loan fee not to exceed ___%, plus appraisal and credit report fee, if any ("Required Mortgage"). If the Required Mortgage has a balloon payment, it shall be due no sooner than ___ years. Buyer shall pay for private mortgage insurance as required by the lending institution. If a FHA or VA mortgage is to be obtained, Rider 8, Rider 9, or the HUD Rider shall be attached to this Contract. (1) If Buyer is unable to obtain the Required Commitment by the First Commitment Date, Buyer shall so notify Seller in writing on or before that Date. Seller may, within 30 business days after the First Commitment Date ("Second Commitment Date"), secure the Required Commitment for Buyer upon the same terms, and may extend the closing date by 30 business days. The Required Commitment may be given by Seller or a third party. Buyer shall furnish all requested credit information, sign customary documents relating to the application and securing of the Required Commitment, and pay one application fee as directed by Seller. Should Seller choose not to secure the Required Commitment for Buyer, this Contract shall be null and void as of the First Commitment Date, and the Earnest Money shall be returned to Buyer. (2) If Buyer notifies Seller on or before the First Commitment Date that Buyer has been unable to obtain the Required Commitment, and neither Buyer nor Seller secures the Required Commitment on or before the Second Commitment Date, this Contract shall be null and void and the Earnest Money shall be returned to Buyer. (3) If Buyer does not provide any notice to Seller by the First Commitment Date, Buyer shall be deemed to have waived this contingency and this Contract shall remain in full force and effect.

5. **Deed.** At closing, Seller shall execute and deliver to Buyer, or cause to be executed and delivered to Buyer, a recordable Warranty Deed with release of homestead rights (or other appropriate deed if title is in trust or in an estate), or Articles of Agreement, if applicable, subject only to the following, if any: covenants, conditions, and restrictions of record; public and utility easements; existing leases and tenancies; special governmental taxes or assessments for improvements not yet completed; unconfirmed special governmental taxes or assessments; general real estate taxes for the year 200___ and subsequent years; the mortgage or trust deed referred to in Paragraph 6 of the General Provisions of this Contract and/or Rider 7, if applicable.

6. **Real Estate Taxes.** Seller represents that the 200___ general real estate taxes are $ **4,845.36**. General real estate taxes shall be prorated as mutually agreed by the Parties prior to the expiration of the Attorney Approval Period. (The following, for Fee Simple Townhomes, should be stricken if not applicable.) Seller represents that as of the Acceptance Date, the regular monthly assessment pertaining to this unit is $ _____; a special assessment has/has not (strike one) been levied. The original amount of the special assessment pertaining to this unit was $ _____, and the remaining amount due at closing will be $ _____, and shall/shall not (strike one) be assumed by Buyer at closing. Buyer acknowledges and agrees that (i) the representations in this Paragraph are provided as of the Acceptance Date; (ii) this information may change, and these fees may increase, prior to the closing date; and (iii) Seller is under no obligation to notify Buyer of any changes to this information, and should changes occur, this Contract shall remain in full force and effect. Seller shall furnish Buyer a statement from the proper representative certifying that Seller is current in payment of assessments, and, if applicable, proof of waiver or termination of any right of first refusal or similar options contained in the bylaws of the Association for the transfer of ownership. Seller shall deliver to Buyer the bylaws, rules and regulations, and the prior and current years' operating budgets within ___ business days of the Acceptance Date. Seller agrees to pay any applicable processing/move-out/transferring fees as required by the Association, and Buyer agrees to pay the credit report and move-in fee if required by the Association. If the right of first refusal or similar option is exercised, this Contract shall be null and void and the Earnest Money shall be returned to Buyer, but Seller shall pay the commission pursuant to Paragraph V of the General Provisions of this Contract.

7. **Closing.** Closing or escrow payout shall be on **11/21 2007** (except as provided in Paragraph 4(b) of this Contract, provided title has been shown to be good or is accepted by Buyer, at a time and location mutually agreed upon by the Parties.

8. **Possession.** (a) Seller agrees to surrender possession of the Property on or before **1/31 2007** ("Possession Date"), provided the transaction has closed.
(b) If the Possession Date is not the date of closing, then, at closing, Seller shall pay to Buyer $ _____ per day for use and occupancy commencing the first day after closing up to and including the Possession Date or on a monthly basis, whichever period is shorter ("Use/Occupancy Payments"). Buyer shall refund any part of Use/Occupancy Payments for use and occupancy beyond the date possession is actually surrendered. Additionally, Seller shall deposit with Escrowee a sum equal to 2% of the Purchase Price ("Possession Escrow") to guarantee possession on or before the Possession Date, which sum shall be held from the net proceeds of closing on Escrowee's form of receipt. If Seller does not surrender the Property on the Possession Date, Seller shall pay to Buyer, in addition to the Use/Occupancy Payments, the sum of 10% of the original amount of the Possession Escrow per day up to and including the day possession is surrendered to Buyer plus any unpaid Use/Occupancy Payments to the date possession is surrendered, these amounts to be paid out of the Possession Escrow and the balance, if any, to be returned to Seller. Acceptance of payments by Buyer shall not limit Buyer's other legal remedies. Seller and Buyer hereby acknowledge that Escrowee shall not distribute the Possession Escrow without the joint written direction of Seller and Buyer. If either Party objects to disposition of the Possession Escrow, then Escrowee may deposit the Possession Escrow with the Clerk of the Circuit Court by the filing of an action in the nature of an Interpleader. Escrowee shall be reimbursed from the Possession Escrow for all costs, including reasonable attorneys' fees, related to the filing of the Interpleader, and the Parties shall indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses.

69  9. **Disclosures.** Buyer has received the Residential Real Property Disclosure Report – ☐ Yes ☐ No; Heat Disclosure ☐ Yes ☐ No; Lead Paint Disclosure ☐ Yes ☐ No;
70  Zoning Certification ☐ Yes ☐ No.
71  10. **Dual Agency.** The Parties consent to _____ ("Licensee") to act as Dual Agent in providing brokerage services on their behalf and specifically
72  consent to Licensee acting as Dual Agent on the transaction covered by this Contract. _____ Seller(s) Initials _____ Buyer(s) Initials
73  11. **Attorney Modification.** Within _____ business days after the Acceptance Date ("Attorney Approval Period"), the Parties' respective attorneys may make
74  modifications to this Contract ("Proposed Modifications") on matters other than the Purchase Price, broker's compensation, and dates, that are mutually acceptable to the
75  Parties. If, within the Attorney Approval Period, the Parties cannot reach agreement regarding the Proposed Modifications, then, at any time thereafter, either Party may
76  terminate this Contract by written notice to the other Party. In that event, this Contract shall be null and void and the Earnest Money shall be refunded to Buyer upon joint
77  written direction of the Parties to Escrowee. IN THE ABSENCE OF DELIVERY OF PROPOSED MODIFICATIONS PRIOR TO THE EXPIRATION OF THE ATTORNEY
78  APPROVAL PERIOD, THIS PROVISION SHALL BE DEEMED WAIVED BY ALL PARTIES, AND THIS CONTRACT SHALL BE IN FULL FORCE AND EFFECT.
79  12. **Inspection.** In addition to the inspection provided in Paragraph F of the General Conditions of this Contract, within _____ business days after the Acceptance Date
80  ("Inspection Period"), Buyer may provide at its expense (unless otherwise provided by law) a home, radon, environmental, lead-based paint and/or lead-based paint
81  hazards (unless separately waived), wood infestation, and/or mold inspection(s) of the Property ("Inspections") by one or more properly licensed or certified inspection
82  personnel ("Inspector"). The inspections shall include only major components of the Property, including, without limitation, central heating, central cooling, plumbing, well,
83  and electric systems, roof, walls, windows, ceilings, floors, appliances, and foundations. A major component shall be deemed to be in operating condition if it performs the
84  function for which it is intended, regardless of age, and does not constitute a health or safety threat. Buyer shall indemnify Seller from and against any loss or damage to
85  the Property or personal injury caused by Buyer or Buyer's Inspector. Prior to expiration of the Inspection Period, Buyer shall notify Seller or Seller's attorney in writing
86  ("Buyer's Inspection Notice") of any defects disclosed by the Inspections that are unacceptable to Buyer, together with a copy of the pertinent pages of the relevant
87  Inspections report. Buyer agrees that minor repairs and maintenance costing less than $250 shall not constitute defects covered by this Paragraph. If the Parties have not
88  reached written agreement resolving the inspection issues within the Inspection Period, then either Party may terminate this Contract by written notice to the other Party.
89  In the event of such notice, this Contract shall be null and void and the Earnest Money shall be refunded to Buyer upon joint written direction of the Parties to Escrowee. IN
90  THE ABSENCE OF WRITTEN NOTICE PRIOR TO EXPIRATION OF THE INSPECTION PERIOD, THIS PROVISION SHALL BE DEEMED WAIVED BY ALL
91  PARTIES, AND THIS CONTRACT SHALL BE IN FULL FORCE AND EFFECT.
92  13. **General Provisions and Riders.** THIS CONTRACT INCLUDES THE GENERAL PROVISIONS ON THE REVERSE SIDE OF THIS CONTRACT AND THE
93  RIDERS ATTACHED TO AND MADE A PART OF THIS CONTRACT.

94  ACCEPTANCE DATE: 1/22/07

95  Buyer Signature: [signed]
    Seller Signature: Maria H Eirod

96  Buyer Signature:
    Seller Signature: Maria H Eirod

97  Print Buyer(s) Name(s): Jose M. Garcia    Social Security #: 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
    Print Seller(s) Name(s): MARIA G EIROD    Social Security #: 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

98-100 Address: 3711 W Diversey, CH IL 60647
    Address: 5425 W Carmen, Chicago IL 60630

101-102 Phone #: 773 645-1880    Email:
    Phone #: 773-545-8740    Email: eagleheart706@sbcgbb...

103 FOR INFORMATIONAL PURPOSES: N/A

104-105 Selling Office and Agent: _____    MLS#: _____    Email: _____
    Listing Office and Agent: _____    MLS#: _____    Email: _____

106-107 Address _____ City _____ State _____ Zip _____
    Address _____ City _____ State _____ Zip _____

108 Phone #: _____    Fax #: _____
    Phone #: _____    Fax #: _____

109-110 Buyer's Attorney: IRA Koffman
    Seller's Attorney: IRA Koffman    Email: _____

111-112 Address _____ City _____ State _____ Zip _____
    Address _____ City _____ State _____ Zip _____

113 Phone #: 312-993-0082    Fax #: _____
    Phone #: 312-993-0089    Fax #: _____

114 Mortgage Company: Midwest Mutual Mortgage    Fax #: 773-250-6904
    Loan Officer: Nilka Cintron

## GENERAL PROVISIONS

A. **Prorations.** Rent, interest on existing mortgages, if any, water taxes and other liens shall be prorated to date of closing. If the Property is improved, but the last available tax bill is on vacant land, the Parties shall reprorate taxes when the bill on improved property is available. Security deposits, if any, shall be paid to Buyer at closing.

B. **Uniform Vendor and Purchaser Risk Act.** The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract.

C. **Title.** At least five days prior to the closing date, Seller shall deliver to Buyer or his agent evidence of merchantable title in the intended grantor by delivering a Commitment for Title Insurance of a title insurance company bearing a date on or subsequent to the Acceptance Date, in the amount of the Purchase Price, subject to no other exceptions than those previously listed within this Contract and to general exceptions contained in the commitment. Delay in delivery by Seller of a Commitment for Title Insurance due to delay by Buyer's mortgagee in recording mortgage and bringing down title shall not be a default of this Contract. Every Commitment for Title Insurance furnished by Seller shall be conclusive evidence of title as shown. If evidence of title discloses other exceptions, Seller shall have 30 days after Seller's receipt of evidence of title to cure the exceptions and notify Buyer accordingly. As to those exceptions that may be removed at closing by payment of money, Seller may have those exceptions removed at closing by using the proceeds of the sale.

D. **Notice.** All notices required by this Contract shall be in writing and shall be served upon the Parties or their attorneys at the addresses provided in this Contract. The mailing of notice by registered or certified mail, return receipt requested, shall be sufficient service when the notice is mailed. Notices may also be served by personal delivery or commercial delivery service, by mail-o-gram, telegram, or by the use of a facsimile machine with proof of transmission and a copy of the notice with proof of transmission being sent by regular mail on the date of transmission. In addition, facsimile signatures shall be sufficient for purposes of executing, negotiating, and finalizing this Contract. E-mail notices shall be deemed valid and received by the addressee when delivered by e-mail and opened by the recipient, provided that a copy of the e-mail notice is also sent by regular mail to the recipient on the date of transmission.

E. **Disposition of Earnest Money.** In the event of default by Buyer, the Earnest Money, less expenses and commission of the Listing Broker, shall be paid to Seller. If Seller defaults, the Earnest Money, at the option of Buyer, shall be refunded to Buyer, but such refunding shall not release Seller from the obligations of this Contract. In the event of any default, Escrowee shall give written notice to Seller and Buyer indicating Escrowee's intended disposition of the Earnest Money and request Seller's and Buyer's written consent to the Escrowee's intended disposition of the Earnest Money within 30 days after the notice. However, Seller and Buyer acknowledge that if Escrowee is a licensed real estate broker, Escrowee may not distribute the Earnest Money without the joint written direction of Seller and Buyer or their authorized agents. If Escrowee is not a licensed real estate broker, Seller and Buyer agree that if neither Party objects, in writing, to the proposed disposition of the Earnest Money within 30 days after the date of Escrowee's notice, then Escrowee shall proceed to disperse the Earnest Money as previously noticed by Escrowee. If either Seller or Buyer objects to the intended disposition within the 30 day period, or if Escrowee is a licensed real estate broker and does not receive the joint written direction of Seller and Buyer authorizing distribution of the Earnest Money, then the Escrowee may deposit the Earnest Money with the Clerk of the Circuit Court by the filing of an action in the nature of an Interpleader. Escrowee may be reimbursed from the Earnest Money for all costs, including reasonable attorney's fees, related to the filing of the Interpleader and the Parties indemnify and hold Escrowee harmless from any and all claims and demands, including the payment of reasonable attorneys' fees, costs, and expenses arising out of these claims and demands.

F. **Operational Systems.** Seller represents that the heating, plumbing, electrical, central cooling, ventilating systems, appliances, and fixtures on the Property are in working order and will be so at the time of closing and that the roof is free of leaks and will be so at the time of closing. Buyer shall have the right to inspect the Property during the 48-hour period immediately prior to closing to verify that they are in working order and that the Property is in substantially the same condition, normal wear and tear excepted, as of the Acceptance Date.

G. **Insulation Disclosure Requirements.** If the Property is new construction, Buyer and Seller shall comply with all insulation disclosure requirements as provided by the Federal Trade Commission, and Rider 13 is attached.

H. **Code Violations.** Seller warrants that no notice from any city, village, or other governmental authority of a dwelling code violation that currently exists on the Property has been issued and received by Seller or Seller's agent ("Code Violation Notice"). If a Code Violation Notice is received after the Acceptance Date and before closing, Seller shall promptly notify Buyer of the Notice.

I. **Escrow Closing.** At the written request of Seller or Buyer received prior to the delivery of the deed under this Contract, this sale shall be closed through an escrow with a title insurance company, in accordance with the general provisions of the usual form of deed and money escrow agreement then furnished and in use by the title insurance company, with such special provisions inserted in the escrow agreement as may be required to conform with this Contract. Upon the creation of an escrow, payment of Purchase Price and delivery of deed shall be made through the escrow, this Contract and the Earnest Money shall be deposited in the escrow, and the Broker shall be made a party to the escrow with regard to commission due. The cost of the escrow shall be divided equally between Buyer and Seller.

J. **Survey.** Prior to closing, Seller shall provide Buyer with a survey by a licensed land surveyor dated not more than six months prior to the date of closing, showing the present location of all improvements. If Buyer or Buyer's mortgagee desires a more recent or extensive survey, the survey shall be obtained at Buyer's expense.

K. **Affidavit of Title, ALTA.** Seller agrees to furnish to Buyer an affidavit of title subject only to those items set forth in this Contract, and an ALTA form if required by Buyer's mortgagee, or the title insurance company, for extended coverage.

L. **Legal Description.** The Parties may amend this Contract to attach a complete and correct legal description of the Property.

M. **RESPA.** Buyer and Seller shall make all disclosures and do all things necessary to comply with the applicable provisions of the Real Estate Settlement Procedures Act of 1974, as amended.

N. **Transfer Taxes.** Seller shall pay the amount of any stamp tax imposed by the state and county on the transfer of title, and shall furnish a completed declaration signed by Seller or Seller's agent in the form required by the state and county, and shall furnish any declaration signed by Seller or Seller's agent or meet other requirements as established by any local ordinance with regard to a transfer or transaction tax. Any real estate transfer tax required by local ordinances shall be paid by the person designated in that ordinance.

O. **Removal of Personal Property.** Seller shall remove from the Property by the Possession Date all debris and Seller's personal property not conveyed by Bill of Sale to Buyer.

P. **Surrender.** Seller agrees to surrender possession of the Property in the same condition as it is on the Acceptance Date, ordinary wear and tear excepted, subject to Paragraph B of the General Provisions of this Contract. To the extent that Seller fails to comply with this Provision, Seller shall not be responsible for that portion of the total cost related to this violation that is below $250.00.

Q. **Time.** Time is of the essence for purposes of this Contract.

R. **Number.** Whenever appropriate within this Contract, the singular includes the plural.

S. **Flood Plain Insurance.** In the event the Property is in a flood plain and flood insurance is required by Buyer's lender, Buyer shall pay for that insurance.

T. **Business Days and Time.** Any reference in this Contract to "day" or "days" shall mean business days, and not calendar days. Business days are Monday, Tuesday, Wednesday, Thursday, and Friday, excluding all official federal and state holidays.

U. **Patriot Act.** Seller and Buyer represent and warrant that they are not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by Executive Order or the United States Treasury Department as a Specially Designated National and Blocked Person, or other banned or blocked person, entity, nation or transaction pursuant to any law, order, rule or regulation which is enforced or administered by the Office of Foreign Assets Control ("OFAC"), and that they are not engaged in this transaction directly or indirectly on behalf of, or facilitating this transaction directly or indirectly on behalf of, any such person, group, entity, or nation. Each Party shall defend, indemnify, and hold harmless the other Party from and against any and all claims, damages, losses, risks, liabilities, and expenses (including reasonable attorneys' fees and costs) arising from or related to any breach of the foregoing representation and warranty.

V. **Brokers.** The Real Estate Brokers named in this Contract shall be compensated in accordance with their agreements with their clients and/or any offer of compensation made by the Listing Broker in a multiple listing service in which the Listing and Cooperating Broker both participate.

JUL-22-2004 18:46 FROM                                    TO:9753950                P:3

# ADDENDUM A

FOR THE PROPERTY LOCATED AT:

5425 W. Carmen

Chicago IL 60630

THE UNDERSIGNED BUYER AND SELLER HEREBY AGREE AS FOLLOWS:

SELLER SHALL CONTRIBUTE/CREDIT/DEFRAY THE SUM OF: $ 13,050 OR 3 %
(STRIKE ONE) OF THE PURCHASE PRICE AS AND FOR THE BUYER COSTS ASSOCIATED
WITH THE PURCHASE OF THE ABOVE PROPERTY INCLUDING BUT NOT LIMITED TO
ORIGINATION FEE(S), DISCOUNT POINTS, TAX SERVICE FEE(S), UNDERWRITING FEE(S),
CITY TRANSFER TAXES, ATTORNEY'S FEE, AND ANY OTHER COST AS CHOSEN BY THE
BUYER WITHOUT LIMITATION. SELLER WILL BE RESPONSIBLE FOR THE ENTIRE AMOUNT
THAT SELLER HAS AGREED TO CONTRIBUTE/CREDIT/DEFRAY AS SET FORTH HEREIN.

SELLER _[signature]_____

SELLER _Maria M Elwd_____

BUYER _[signature]_____

BUYER _____

DATED _1/22/07_____