**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSE M. GARCIA AND IRMA GARCIA,<br><br>　　　　Plaintiffs,<br>　　v.<br><br>MIDWEST MUTUAL MORTGAGE, INC., MARIA ELROD, AND INDYMAC BANK,<br><br>　　　　Defendants. | Case No. 08 C 745<br><br>Judge Charles R. Norgle |

**MEMORANDUM IN SUPPORT OF INDYMAC BANK, F.S.B.'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)**

Jose and Irma Garcia ("Plaintiffs") have failed to bring a valid rescission claim against defendant Indymac Bank, F.S.B. ("Indymac"), both under common law and the federal Truth in Lending Act, 15 U.S.C. § 1635 ("TILA"). Plaintiffs' admissions in their complaint, along with the documents attached to Indymac's answer, show that Indymac is entitled to judgment on the pleadings with regard to Plaintiffs' rescission claim for at least the following reasons:

*First,* Plaintiffs have not adequately pled that they are entitled to common law rescission because they have not pled a mistake in the making of the mortgages at issue, any fraud in the making of the mortgages, any non-performance by Indymac, or the ability to bring the parties back to the positions in which they were before the mortgage loan transactions; and

*Second,* Plaintiffs' admission that the property secured by the mortgages is not their "principal dwelling" exempts the mortgages from TILA and the claim for rescission rights.

Therefore, this Court should grant Indymac's Motion for Judgment on the Pleadings and dismiss Plaintiffs' rescission claim as to Indymac.

## FACTS

On January 7, 2008, Plaintiffs filed their complaint in Illinois state court ("Complaint" or "Compl.") against Indymac, Midwest Mutual Mortgage, Inc. ("Midwest Mutual"), and Maria Elrod ("Elrod"). On February 4, 2008, Indymac removed the case to this Court, and, on March 6, 2008, Indymac filed its Answer and Affirmative Defenses to the Complaint ("Answer").

Plaintiffs are husband and wife, Elrod is the sister of Plaintiff Irma Garcia, and Midwest Mutual is a mortgage broker. Compl. ¶¶ 1-3. On or before February 1, 2007, Elrod owned real property at 5425 West Carmen Avenue, Chicago, Illinois 60630 (the "Property"). *Id.* ¶ 6.

According to Plaintiffs' Complaint, Elrod fell behind in her mortgage payments and wanted to refinance her mortgage on the Property. *Id.* ¶ 7. She allegedly discussed this fact with Midwest Mutual, who told her to recruit a family member with good credit to buy the Property. *Id.* ¶¶ 7-8. Plaintiffs allege that, once this family member was recruited, Midwest Mutual would refinance Elrod's home, that Elrod would remain in the home and make the new mortgage payments, and then Elrod would purchase the Property back from the family member a year later. *Id.* ¶ 9. Elrod recruited Plaintiffs to purchase the Property and to obtain the new mortgages. *Id.* ¶ 10. Plaintiffs used Midwest Mutual as their mortgage broker. *Id.* ¶ 11.

On or before January 22, 2007, Plaintiffs offered to purchase the Property for $450,000. *See* Residential Real Estate Contract at 1, 2 (listing the "Purchase Price" as $450,000 and the "Acceptance Date" as January 22, 2007) (Ex. 5 to Answer). Midwest Mutual informed Plaintiffs "that they would make the loans substantially higher than the current payoff figure for . . . Elrod's outstanding loans and give that money to . . . Elrod who in turn would use that money for one year to pay the mortgage payments and reestablish her credit and then repurchase the home back from the Plaintiffs." Compl. ¶ 12. Furthermore, Midwest Mutual informed Plaintiffs "that they did not need a lawyer and that they had nothing to worry about and that Midwest Mutual

2

would take care of them." *Id*. ¶ 13. Before the closing, Midwest Mutual told Plaintiffs to sign all of the mortgage documents and that Midwest Mutual would secure the mortgage. *Id*. ¶ 14.

On February 2, 2007, Plaintiffs signed two mortgages with Indymac: one for $360,000.00 (the "Larger Mortgage") and a second mortgage for $90,000.00 (the "Smaller Mortgage"). *Id*. ¶ 15; Ex. B to Compl. (Larger Mortgage); Ex. 3 to Answer (Smaller Mortgage). The documentation for both loans includes a "1-4 Family Rider," which deletes the provision in both Mortgages stating that the "Borrower shall occupy, establish, and use the Property as Borrower's principal residence" (Larger Mortgage ¶ 6 (Ex. B to Compl.); Smaller Mortgage ¶ 6 (Ex. 3 to Answer)), and replaces it with provisions relating to rent loss insurance and assignment of leases and rents. *See* 1-4 Family Rider for Larger Mortgage ¶¶ D, F-H (Ex. B to Compl.); 1-4 Family Rider for Smaller Mortgage ¶¶ D, F-H (Ex. 4 to Answer). Plaintiffs did not attend the closing, but rather pre-signed these documents. Compl. ¶ 17. After the closing, Elrod conveyed the property to Plaintiffs. *Id*. ¶ 16.

Plaintiffs allege that Midwest Mutual did not give the Plaintiffs a copy of the RESPA statement or the closing statement, nor did Midwest Mutual provide Plaintiffs with "any copies of any of the loan applications and other documents." *Id*. ¶ 18. Plaintiffs "believe" that Midwest Mutual "put false statements regarding their income and other false information on the loan applications." *Id*. ¶ 19. Plaintiffs further allege they "have made demand upon the Defendants for a copy of the appraisal for the property, the RESPA and other closing documents pertaining to this closing and those demands have been ignored." *Id*. ¶ 20. In addition, Plaintiffs allege that Midwest Mutual hired an appraiser "who appraised the property at a value in excess of $100,000.00 of its fair market value in order to make these above loans." *Id*. ¶ 22.

3

Plaintiffs also allege that Midwest Mutual and Indymac "did not provide to the Plaintiffs a Truth in Lending Disclosure Statement prior to signing either loan." *Id*. ¶ 22. However, Plaintiffs were provided with, and signed, Truth in Lending Disclosures for both mortgage loans on or before February 2, 2007. *See* Truth in Lending Disclosures for Larger Mortgage (Ex. 1 to Answer) and for Smaller Mortgages (Ex. 2 to Answer).

According to Plaintiffs, Elrod "has failed to make the required payments on the two outstanding mortgages and has informed the Plaintiffs that the Defendant Midwest Mutual Mortgage took substantially more money from the closing than reported on the Truth in Lending statements." Compl. ¶ 23.

Plaintiffs bring a claim for rescission against all defendants,[1] alleging that "Illinois Courts allow contracts to be rescinded where there is fraud or material non-performance by one of the parties." *Id*. ¶ 24. In support of their rescission claim, Plaintiffs allege that "the purchase price paid by the Plaintiffs was more than $100,000.00 greater than the fair market value of the property," *id*. ¶ 25, and that Midwest Mutual "knew that the purchase price was $100,000.00 greater than actual market value and utilized this fraudulent appraisal to induce this transaction." *Id*. ¶ 26. Plaintiffs further allege that, because Indymac did not timely disclose Truth in Lending disclosures, "Plaintiffs did not realize this difference before signing the documents." *Id*. ¶ 27.[2]

Plaintiffs alleged that they "believed these above statements and justifiabl[y] relied upon these false representations and entered into these mortgages." *Id*. ¶ 29. Furthermore, Plaintiffs allege that Elrod continues to reside on the Property, but has ceased making mortgage payments, and Plaintiffs have offered to execute a deed conveying the Property back to Elrod. *Id*. ¶¶ 30-31.

---

[1] Plaintiffs also bring several other claims against Midwest Mutual and Elrod, but Plaintiffs' rescission claim is the only claim against Indymac.

[2] Plaintiffs allege that Midwest Mutual was Indymac's agent and was compensated by Indymac. *Id*. ¶ 28.

4

**STANDARD FOR MOTIONS FOR JUDGMENT ON THE PLEADINGS**

Whether judgment on the pleadings is proper is subject to the same standard applied to dismissals under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Local Union ISO, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). A motion under 12(c) should be granted if "it appears beyond doubt that the plaintiff can prove no facts sufficient to support his claim for relief, and the facts in the complaint are viewed in the light most favorable to the non-moving party." *Flenner v. Sheahan*, 107 F.3d 459, 461 (7th Cir. 1997). In deciding such a motion, the Court may consider documents attached as exhibits to the pleadings or incorporated by reference in the pleadings without converting the motion to a summary judgment motion. *United States v. Wood*, 925 F.2d 1580, 1581-82 (7th Cir. 1991); Fed. R. Civ. P. 10(c).

**ARGUMENT**

**I.    PLAINTIFFS ARE NOT ENTITLED TO COMMON LAW RESCISSION.**

As a matter of law, Plaintiffs are not entitled to rescission. There are three circumstances in which rescission of a contract is an appropriate remedy, and none of those circumstances exist here: (1) mistake by the parties at the time of execution of the contract; (2) fraud in the making of the contract; and (3) substantial non-performance by the party against whom rescission is being sought. Finally, "a court will not grant rescission of a contract in any event where the *status quo ante* of the parties cannot be restored . . . ." *Klucznik v. Nikitopoulos*, 503 N.E.2d 1147, 1150 (Ill. App. Ct. 1st Dist. 1987).

None of those circumstances is applicable here, as Plaintiffs' Complaint and the documents attached to Indymac's Answer show that Plaintiffs were aware of any allegedly inflated price before entering into the transaction and, in fact, offered to purchase the Property for $450,000. Also, Indymac has performed its duties under the mortgage contract, which

prevents Plaintiffs from claiming rescission based on any alleged non-performance. Furthermore, rescission is not an appropriate remedy because here it is not possible to place the parties in the same positions as they were in before the contract was entered into. Therefore, Plaintiffs are not entitled to rescission, and this Court should dismiss Plaintiffs' rescission count against Indymac.

### A.   Plaintiffs Allege No Mutual or Unilateral Mistake at the Time of the Execution of the Contract.

Plaintiffs do not allege any mistake at the time of execution that would justify rescission under common law. "A mistake by the parties at the time of execution of the contract provides grounds for rescission." *In re Marriage of Agustsson*, 585 N.E.2d 207, 213 (Ill. App. Ct. 2d Dist. 1992) (citation omitted). "To invalidate an agreement, a mistake must relate to a past or present fact material to the contract. Predictions usually do not qualify as such present facts, and mistaken predictions will not invalidate a contract." *United City of Yorkville v. Vill. of Sugar Grove*, 875 N.E.2d 1183, 1196 (Ill. App. Ct. 2d Dist. 2007) (citations and quotation marks omitted).

> Rescission may be based on either mutual mistake or unilateral mistake:
>
> [R]escission is a proper remedy for either a unilateral or mutual mistake of fact when the party seeking rescission shows by clear and convincing evidence that (1) the mistake is of a material nature; (2) the mistake is of such consequence that enforcement is unconscionable; (3) the mistake occurred notwithstanding the exercise of due care by the party seeking rescission; and (4) rescission can place the other party in status quo.

*In re Marriage of Agustsson*, 585 N.E.2d at 214 (citations omitted).

"A mutual mistake occurs when an actual good-faith agreement is reached, but, due to error, the contract is written in terms that violate the understanding of both parties." *Id.* at 213 (citation omitted). Unilateral mistake may justify rescission if:

6

> By reason of a mistake of fact by one of the parties, not due to his negligence, the contract is different with respect to the subject matter or terms from what was intended, equity will give such party a remedy by cancellation where the parties can be placed in *status quo*. The ground for relief is, that by reason of the mistake there was no mutual assent to the terms of the contract.

*Id*. at 213 (quoting *Steinmeyer v. Schroeppel*, 226 Ill. 9, 13, 80 N.E. 564, 565 (1907)).

Here, Plaintiffs made an offer to purchase the Property for $450,000, had a contract with Elrod to purchase the Property for $450,000, applied for $450,000 in financing from Indymac, and received two mortgages from Indymac totaling $450,000, both of which *they signed*. Furthermore, they admit in their Complaint that Midwest Mutual told Plaintiffs before they signed their loans that their loans were going to be higher than the property value, and they signed all of the loan documents nonetheless. *See* Compl. ¶ 12.

None of Plaintiffs' allegations can be characterized as a mutual mistake, since Plaintiffs do not allege that the mortgages were erroneously "written in terms that violate the understanding of both parties." *In re Marriage of Agustsson*, 585 N.E.2d at 213. Furthermore, there was no unilateral mistake alleged. Unilateral mistake may justify rescission, if, "[b]y reason of a mistake of fact by one of the parties, not due to his negligence, the contract is different with respect to the subject matter or terms from what was intended . . . ." *Id*. at 213 (citation and quotation marks omitted).

Plaintiffs have admitted -- and the documents attached to Indymac's Answer further show -- that the mortgages Plaintiffs entered into are not different with respect to the subject matter or terms Plaintiffs intended. Plaintiffs offered to purchase the Property for $450,000, they applied for (and received) mortgages totaling $450,000, and they signed those mortgages, thereby indebting themselves to Indymac in the principal amount of $450,000.

Even if Plaintiffs' allegations regarding the overvalued appraisal were true, Plaintiffs cannot claim a mistake because they offered to purchase the Property for $450,000 before the

7

appraisal, they were told (and accepted the fact) that they would be paying more than the fair market value of the Property before they entered into the mortgages, and they signed all of their mortgage documents in order to receive $450,000 in financing. Thus, they *intended* to enter into a mortgage transaction to purchase the Property for $450,000, and, therefore, rescission is not available. *See id*.

"Generally, courts will not inquire into the sufficiency of the consideration to support a contract." *United City of Yorkville*, 875 N.E.2d at 1195 (citations and quotation marks omitted). Furthermore, "mistaken predictions will not invalidate a contract." *Id*. at 1196 (citations and quotation marks omitted). Essentially, Plaintiffs are seeking rescission because they paid more for the Property than they thought they should have paid or than they should have offered in the first place. However, even if they paid more than they should have paid for the Property, *they paid the price they offered*, and they admittedly knew going into the transaction that they would be paying more than the market value. This goes to the sufficiency of consideration, and it is not the type of mistake that merits rescission.

In sum, the pleadings show that Plaintiffs do not state a claim for rescission based on mistake, and their rescission claim against Indymac must be dismissed.

### B. Plaintiffs Allege No Facts Establishing a Fraud in the Making of the Contract.

There is likewise no allegation of fraud in the making of the contract. Rescission may also be appropriate "[w]here there has been some fraud in the making of a contract . . . ." *Chapman v. Hosek*, 475 N.E.2d 593, 598 (Ill. App. Ct. 1st Dist. 1985) (citation omitted). "Such fraud may consist of either an untrue statement or the concealment of a material fact. The concealment may not be a mere passive omission of facts during the business transaction but

must have been done with the intent to deceive under circumstances creating an opportunity and a duty to speak." *Id*. (citation omitted).

> The elements of an equitable claim for rescission on the basis of fraud in misrepresentation are: a representation in the form of a statement of material fact, made for the purpose of inducing the other party to act; the statement is false and known by the party making it to be false, or not actually believed by him to be true; and the party to whom it is made must be ignorant of its falsity, must reasonably believe it to be true, must act thereon to his damage, and in so acting must rely upon the truth of the statements.

*Id*. (citation omitted). "Concealment of an existing material fact is actionable where employed as a device to mislead. In order to be material, the concealed fact must be such that had the other party been aware of it, he would have acted differently." *Id*.

In this case, Plaintiffs are not entitled to rescission based on any alleged fraud or concealment of fact for many of the same reasons why they are not entitled to rescission based on an alleged mistake: *they have admitted that they were not defrauded*. Plaintiffs' Complaint does not contain any allegations that Indymac made any statement to Plaintiffs or concealed any facts from Plaintiffs, much less any allegations that Indymac intended to deceive Plaintiffs in any manner. Therefore, Plaintiffs fail to satisfy the first two elements of common law rescission. *Chapman*, 475 N.E.2d at 598.

In addition, Plaintiffs do not allege any material concealment of fact. Plaintiffs admit that they knew the circumstances of the transaction when they entered into the mortgages. In fact, they admit that the *entire purpose* of the transaction was to make the loans higher than the payoff amount so that Elrod would receive enough money to make mortgage payments for one year, "reestablish her credit and then repurchase the home back from the Plaintiffs." Compl. ¶ 12. Furthermore, they had offered to purchase the Property for $450,000 and signed a contract to purchase the Property for that amount long before they signed their loan documents or were extended credit. *See* Ex. 5 to Answer (listing contract acceptance date as January 22, 2007); Ex.

9

Case 1:08-cv-00745   Document 18   Filed 04/28/2008   Page 10 of 16

B to Compl. (listing mortgage date for Larger Mortgage as February 2, 2007); Ex. 3 to Answer (listing mortgage date for Smaller Mortgage as February 2, 2007).  Plaintiffs can hardly claim that their receipt of two mortgage loans from Indymac, which totaled $450,000, was a result of any concealed fact or fraud when they received exactly what they asked for.  Nor can they claim that the allegedly inflated appraisal "induce[d] this transaction," Compl. ¶ 26, because they had offered to pay (and signed a contract to pay) $450,000 for the Property before the appraisal took place and before Plaintiffs signed any loan documents.  In sum, Plaintiffs have failed to allege that they would have acted differently had they known about the allegedly inflated appraisal before they signed their loan documents.

To the extent Plaintiffs allege that they are entitled to rescission based on Indymac's alleged failure to timely disclose Truth in Lending Disclosures, Plaintiffs are not entitled to rescission at common law. While failure to provide Truth in Lending Disclosures in a timely manner can, in some circumstances implicate liability under TILA, such failure to disclose is not grounds for rescission at common law.

Furthermore, Plaintiffs cannot allege that they would have acted differently had they been aware of the alleged concealment of the Truth in Lending Disclosures.  Plaintiffs' own admissions refute their claim that, because Indymac "did not disclose the Truth in Lending Disclosures timely, the Plaintiffs did not realize [the difference between the appraisal price and the market price] before signing the documents."  Compl. ¶ 27.  First, the Truth in Lending Disclosures do not contain (and are not required to contain) any mention of the appraised value of the Property.  Second, as explained in more detail below in Part II, because this transaction did not involve Plaintiffs' "principal dwelling," the transaction was not subject to TILA, which means that Indymac was not under an obligation to "timely" disclose anything.

Third, Plaintiffs' Truth in Lending Disclosures are dated February 2, 2007. *See* Exs. 1 and 2 to Answer. However, Plaintiffs admit that they pre-signed all of their loan documents before the closing. Compl. ¶ 17. Thus, at the very latest, Plaintiffs signed the Truth in Lending Disclosures on February 2, 2007 and, in any event, they signed the Disclosures before the closing of the loans. TILA requires "the disclosures required under [15 U.S.C. § 1638(a) to] be made before the credit is extended." 15 U.S.C. § 1638(b)(1).[3] Therefore, not only were the Disclosures timely made under TILA (if the transaction was subject to TILA, which it is not), but even if the Disclosures did contain a reference to the appraised value of the Property, Plaintiffs admittedly would have known about the alleged difference between the appraised value and market price *before* the closing of the loans or the extension of any credit. Thus, even if the Disclosures had been concealed from Plaintiffs, as discussed above, Plaintiffs were well aware before entering into their mortgages with Indymac that the mortgages would total $450,000, given that they offered to purchase the Property for that amount (*see* Ex. 5 to Answer) and they signed loan documents indicating that the amount of their loans would be $450,000.

In sum, Plaintiffs have not plead several of the elements necessary to state a claim against Indymac for rescission based on fraud or concealment of fact. Plaintiffs' admissions in their Complaint and the documents attached to Indymac's Answer negate that any facts were concealed from Plaintiffs or that Plaintiffs were defrauded into entering their mortgages with Indymac. This Court should dismiss Plaintiffs' rescission claim against Indymac.

---

[3] 15 U.S.C. § 1638(a) lists the Truth in Lending disclosures that must be made to a borrower. Plaintiffs do not allege that the disclosures they received were deficient in anyway. In fact, the disclosures that Plaintiffs received contained all of the disclosures required by § 1638(a). *See* Exs. 1 and 2 to Answer.

11

### C.    There Are No Facts Demonstrating Substantial Non-Performance.

The third ground for common law rescission – substantial non-performance – is nowhere alleged and cannot be alleged.  Under Illinois laws, a contract may be rescinded when there has been "substantial non-performance."

> [S]ubstantial nonperformance or breach of contract warrants rescission where the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it. A plaintiff desiring to rescind a contract must merely show the defendant's nonperformance or inability to perform and offer to return the value of the consideration received or otherwise return the defendant to the status quo ante.

*United City of Yorkville*, 875 N.E.2d at 1195 (citations and quotation marks omitted).  Plaintiffs' rescission claim against Indymac must fail, insofar as it is based on any alleged "material non-performance," *see* Compl. ¶ 24, because Plaintiffs' Complaint contains no allegations that Indymac has failed to perform.  In fact, the only evidence before this Court shows that Indymac performed its obligations under the two mortgage loans by providing Plaintiffs with the accompanying financing to purchase the property.

The only allegations relating to an alleged non-performance relate to Plaintiffs' arrangement with Elrod.  *See id*. ¶¶ 23, 30-31.  Any non-performance issues that Plaintiffs may have with an alleged contract between Plaintiffs and Elrod have demonstrably nothing to do with the mortgages between Indymac and Plaintiffs (and the concomitant obligations under those mortgages).  In sum, Plaintiffs fail to allege that Indymac has not performed any of its duties under the mortgage contracts. Therefore, they are not entitled to rescind their mortgages with Indymac based on a theory of non-performance, and their rescission claim against Indymac must be dismissed.

### D. Rescission Is Improper Because Rescission Will Not Return the Parties to Their Positions before the Loans Were Made.

Finally, rescission of the mortgage loan between Plaintiffs and Indymac will not place the parties in the same position as they were before the mortgage was entered into. As discussed above, "a court will not grant rescission of a contract in any event where the *status quo ante* of the parties cannot be restored . . . ." *Klucznik*, 503 N.E.2d at 1150 (citations omitted).

Plaintiffs nowhere allege that rescission of the mortgages will restore the parties to the "status quo ante." Nor can they. Before the mortgage loans were entered into, Indymac was in possession of the $450,000 that it eventually loaned to Plaintiffs, and Indymac did not have a security interest in the Property. Plaintiffs did not have title to the Property and were not in possession of the funds required to purchase the Property. In order to place the parties in the same position as they were before the mortgages were entered into, something more than rescission of the mortgages would be required. If the loans were to be rescinded, Plaintiffs would be required to return to Indymac the balance of the mortgage loans, and Indymac would be required to release its security interest in the Property. However, Plaintiffs would continue to hold title to the property, Plaintiffs would have several hundred thousand dollars less than they had before they entered into the loans, and co-defendant Elrod would continue to reside at the property. Rescission of the mortgages will not solve Plaintiffs' problem regarding Elrod's failure to pay Plaintiffs' mortgage payments, nor would rescission of the mortgages give Plaintiffs what they seek, which is to return the title to Elrod, in exchange for the money used to purchase the Property.

Because the parties cannot be placed in the same positions as they were before the mortgage loans were entered into, Plaintiffs' rescission claim cannot, as a matter of law, succeed

under any theory of rescission. Therefore, this Court should dismiss Plaintiffs' rescission claim against Indymac.

## II.    PLAINTIFFS ARE NOT ENTITLED TO RESCISSION UNDER THE TRUTH IN LENDING ACT.

Plaintiffs are likewise not entitled to rescind their mortgages under TILA. Plaintiffs do not explicitly bring their rescission claim under TILA, but Plaintiffs do allege that Indymac failed to timely disclose the Truth in Lending Disclosures. *See* Compl. ¶ 27. If that allegation were true -- which, as discussed above in Part I.B, it is not -- then Plaintiffs' right of rescission under TILA would be extended from three days to three years, *see* 15 U.S.C. § 1635(f), but such an allegation would not be grounds for *common law* rescission.

If Plaintiffs are indeed attempting to assert a TILA rescission claim, then their rescission claim must be dismissed for the separate reason that TILA "does not apply to . . . [c]redit transactions, other than those in which a security interest is or will be acquired in real property . . . *used or expected to be used as the principal dwelling of the consumer* . . . ." 15 U.S.C. § 1603(3) (emphasis added). *See also id*. § 1635(a) (rescission under TILA is available only for a "consumer credit transaction . . . in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any *property which is used as the principal dwelling of the person to whom credit is extended*.") (emphasis added). "A consumer can only have *one* principal dwelling at a time. A vacation or other second home would not be a principal dwelling." *Scott v. Long Island Sav. Bank*, 937 F.2d 738, 741 (2d Cir. 1991) (emphasis in original) (citation and quotation marks omitted).

Plaintiffs admit in their Complaint that they do not reside at the Property. *See* Compl. ¶¶ 9-11. Furthermore, both loans include a "1-4 Family Rider," which deletes the provision in both Mortgages stating that the "Borrower shall occupy, establish, and use the Property as

14

Borrower's principal residence." *See* 1-4 Family Rider for Larger Mortgage ¶ F (Ex. B to Compl.); 1-4 Family Rider for Smaller Mortgage ¶ F (Ex. 4 to Answer). Therefore, the property that is the subject of the loans at issue is *not* Plaintiffs' "principal dwelling," Plaintiffs' mortgages are not covered by TILA, and they are not entitled to rescission rights under TILA. Thus, to the extent that Plaintiffs assert a right to rescission under TILA, their rescission claim must likewise be dismissed.

## CONCLUSION

For all the foregoing reasons, this Court should grant Indymac's Motion for Judgment on the Pleadings.

Date: April 28, 2008                                         Respectfully submitted,

**INDYMAC BANK, F.S.B.**

By:   s/ Richard E. Gottlieb
      Richard E. Gottlieb (rgottlieb@dykema.com)
      Andrew D. LeMar (alemar@dykema.com)
      Dykema Gossett PLLC
      10 South Wacker Drive, Suite 2300
      Chicago, IL  60606-7407
      (312) 876-1700

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2008, I electronically filed the foregoing **Memorandum in Support of Indymac Bank, F.S.B.'s Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)** using the CM/ECF system, which sent notification of such filing to counsel set forth below:

Keil M. Larson (keil@keillarson.com)

In addition, I served the foregoing via U.S. Mail upon the following:

> Midwest Mutual Mortgage, Inc.
> c/o Michael F. Leiva
> 2554 W. Fullerton Ave.
> Chicago, Illinois 60647
>
> Maria Elrod
> 5425 W. Carmen Ave.
> Chicago, Illinois 60630

                                                  s/ Irina V. Frye

CHICAGO\2438794.3
ID\ADL